IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

K.I., a minor, and J.I., individually and )
on behalf of K.I., )
 )
        Plaintiffs, )
 )
        v. )     1:19CV857
 )
DURHAM PUBLIC SCHOOLS BOARD )
OF EDUCATION and NORTH CAROLINA )
STATE BOARD OF EDUCATION, )
 )
        Defendants. )

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

    Plaintiff J.I. brings this action individually and on behalf of her disabled daughter, K.I., pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA") and related federal statutes.[1] (ECF No. 22.) Plaintiffs allege that Defendants, the Durham Public Schools Board of Education ("DPS") and the North Carolina State Board of Education ("SBE"), failed to provide K.I. with a free appropriate public education, as required by law. (*Id.* ¶ 1.) Before the Court are motions to dismiss brought by DPS and SBE. (ECF Nos. 24; 27.) Each argues that Plaintiffs' amended complaint should be dismissed for lack of subject-matter jurisdiction and for failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF Nos. 24 at 1; 27 at 1.) For the reasons that follow,

---

[1] Plaintiffs also allege Defendants violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* (Plaintiffs' "Section 504" claim), and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (Plaintiffs' "ADA" claim). (ECF No. 22 ¶¶ 218–50.)

the Court concludes that it lacks subject-matter jurisdiction and therefore must grant Defendants' motions.

## I. THE IDEA

The IDEA "offers States federal funds to assist in educating children with disabilities." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 993 (2017). "In exchange for the funds, a State pledges to comply with numerous statutory conditions [including that it] must provide a free appropriate public education—a FAPE, for short—to all eligible children." *Id.* At the heart of the IDEA's scheme for providing a FAPE to disabled children rests the individualized education program, or IEP. *Id.* at 994. An IEP is a "comprehensive" special education plan, designed by the child's parents, teachers, and school administrators, that is "'tailored to the unique needs' of a particular child." *Id.* (quoting *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 181 (1982)).

To help all eligible children receive a FAPE, "school districts evaluate children to assess any disabilities and determine their educational needs." *Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961, 965 (5th Cir. 2016). Any parent who disagrees with their local school district's evaluation of their child "may be entitled to an independent educational evaluation (IEE) at public expense." *Id.*; *see also* 20 U.S.C. 1415(b)(1); 34 C.F.R. § 300.502(b)(1). When parents and guardians disagree with their school district regarding their child's FAPE, the IDEA also "establishes a formal set of procedures that grant a plaintiff the right to file a civil action in federal court." *Z.G. ex rel. C.G. v. Pamlico Cty. Pub. Sch. Bd. of Educ.*, 744 F. App'x 769, 776 (4th Cir. 2018). "Prior to bringing suit, however, a plaintiff must exhaust his

administrative remedies." *Id.* As the Fourth Circuit recently explained, "[i]n North Carolina, the [IDEA's] administrative review process encompasses two steps." *Id.*

> First, the plaintiff must file with the Office of Administrative Hearings a petition for an impartial hearing before an administrative law judge (ALJ). Second, the plaintiff may appeal the decision of the ALJ to a Review Officer appointed by the State Board of Education . . . Only after receiving the Review Officer's finding or decision may a plaintiff proceed to file a civil action in state or federal court.

*Id.* (internal citations and quotations omitted)*; see also E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509, 513–14 (4th Cir. 2014). Crucially for the resolution of this case, failure to exhaust these state administrative procedures deprives federal courts of subject-matter jurisdiction. *Z.G.*, 744 F. App'x at 777; *MM ex rel. DM v. Sch. Dist. Of Greenville Cty.*, 303 F.3d 523, 536 (4th Cir. 2002).

## II. PLAINTIFFS' AMENDED COMPLAINT

This lawsuit concerns K.I., a minor who lives with her parents in Durham, North Carolina. (*See* ECF No. 22 ¶¶ 41, 46.) Though K.I. is a bright child with "above average cognitive abilities," she has also been diagnosed with an anxiety disorder, Attention-Deficit/Hyperactivity Disorder, a sensory processing disorder, a Specific Learning Disorder with impairment in reading, Autism Spectrum Disorder, and an obsessive skin picking disorder. (*See id.* ¶¶ 47–48.) From kindergarten through sixth grade, K.I. attended DPS schools. (*Id.* ¶ 49.) Though she attended a local charter school for seventh and eighth grade, K.I. plans to return to DPS for high school at the start of the 2020–2021 academic year. (*See id.* ¶¶ 79, 81, 83.) This lawsuit alleges that Defendants violated the IDEA by denying K.I. a FAPE and by requiring that her independent educational evaluators sign restrictive contracts.

3

During the 2016–2017 school year, when K.I. was in fifth grade, her mother submitted a written referral to DPS asking it "to determine whether [K.I.] was eligible for services under the IDEA."[2] (*See id.* ¶ 55.) Pursuant to this request, DPS "conducted a psychological, occupational therapy, and speech/language evaluation of K.I. in July and August of 2017." (*Id.* ¶ 58.) At an Initial Eligibility Meeting held in August 2017, DPS determined that K.I. was not eligible for IDEA services. (*Id.* ¶¶ 63–64.) K.I.'s parents objected to this decision and requested IEEs at public expense. (*See id.* ¶ 68.) These independent evaluations were conducted while K.I. was in the sixth grade and concluded in May of 2018. (*See id.* ¶ 76.) They diagnosed K.I. with a "Specific Learning Disorder with impairment in reading, Autism Spectrum Disorder, and Social (Pragmatic) Communication Disorder." (*Id.* ¶ 75.) J.I. then sought to hold a new IEP meeting with DPS to reconsider K.I.'s eligibility for services in light of the IEEs, but after DPS canceled a planned meeting, J.I. enrolled K.I. in a local charter school. (*Id.* ¶¶ 76–79.) K.I. started attending her new charter school in late July 2018 and was promptly found eligible for IDEA services. (*Id.* ¶¶ 79–80.)

According to Plaintiffs, after K.I.'s parents requested IEEs and while K.I. was still enrolled in her DPS middle school, DPS required the evaluators selected by the family to agree to a contract ("the IEE Contract") containing "several provisions that impeded K.I.'s parents' ability to meaningfully participate" in the IEP process. (*Id.* ¶ 87.) For instance, the IEE Contract barred the evaluators from providing any further services to K.I. or from serving as expert witnesses for her parents in future proceedings. (*Id.* ¶ 89.) Plaintiffs allege these

---

[2] K.I. was initially determined eligible for IDEA services in the second grade but was found ineligible for services when she was reevaluated in the third grade. (*See id.* ¶ 51.)

4

provisions (collectively "the Limited Relationship Provisions") "eviscerated" the independence IEEs are meant to provide. (*Id.* ¶ 93.)

Meanwhile, in April of 2018, a group of education lawyers filed two complaints with the North Carolina Department of Public Instruction ("NCDPI"),[3] alleging that North Carolina school districts in general, and DPS in particular, were violating the IDEA, in part, by forcing independent educational evaluators to sign contracts containing restrictive terms.[4] (*See* ECF Nos. 22 ¶ 109; 27-3 at 6, 26.) The SBE issued its final report (the "Final Report") on June 18, finding, in part, that the Limited Relationship Provisions in DPS's IEE contracts complied with the IDEA.[5] (ECF Nos. 22 ¶¶ 111–13; 27-3 at 42, 48.) Plaintiffs allege in their amended complaint that the SBE issued this blessing of the Limited Relationship Provisions despite knowing that DPS's IEE Contract violated federal regulations prohibiting public agencies from imposing greater restrictions on independent evaluators than they place on their own evaluators. (*See* ECF No. 22 ¶ 118.)

---

[3] While Plaintiffs were not parties to these complaints, (*see* ECF No. 27-3 at 10–17, 29–36), K.I.'s IDEA process provided some of the factual underpinnings of the complaints, (*see* ECF No. 24-1 at 91–92).

[4] The Court considers these complaints as well as several documents attached to the Defendants' motions to dismiss as they are integral to Plaintiffs' complaint and their authenticity is not in dispute. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (explaining that when a defendant moves to dismiss for lack of subject-matter jurisdiction based on a complaint's failure to allege facts on which jurisdiction can be based, the Plaintiff is afforded "the same procedural protection as he would receive under Rule 12(b)(6) consideration").

[5] The report was issued by the Exceptional Children Division of NCDPI. (ECF No. 27-3 at 42.) The Exceptional Children Division "implements the requirements of the IDEA, including the investigation and resolution of State complaints," on behalf of the SBE. (ECF No. 24-1 at 22.)

5

On August 14, 2018, a few weeks after K.I. started seventh grade at her charter school, Plaintiffs filed a petition for a due process hearing with North Carolina's Office of Administrative Hearings ("OAH"), alleging, among other things, that DPS and SBE had violated the IDEA by failing to provide K.I. with a FAPE and by utilizing the Limited Relationship Provisions in IEE contracts.[6] (*See id.* ¶¶ 147–49.) This hearing occurred during October 2018 and ALJ Stacey Bice Bawtinhimer ("the ALJ") issued her final decision on April 11, 2019. (ECF Nos. 22 ¶¶ 150, 158; 24-1.)

In part, the ALJ held that the Limited Relationship Provisions used by DPS violated the IDEA by imposing "inappropriate conditions for an IEE" in order to "thwart" J.I.'s ability to challenge DPS's determination that K.I. was not eligible for IDEA services. (ECF No. 24-1 at 135–36.) According to the ALJ, the Limited Relationship Provisions "'bought the silence' of the independent evaluators" who examined K.I. and had a "chilling and obvious" effect on the independent evaluators that testified at the due process hearing. (*Id.* at 90–91.) Accordingly, the ALJ prohibited DPS from requiring independent educational evaluators to sign contracts containing the Limited Relationship Provisions or similar language. (*Id.* at 143.) Despite this order, however, the ALJ found that DPS had not violated K.I.'s substantive right to a FAPE because Plaintiffs had failed to prove that K.I. required special education. (*Id.* at 1, 8.) Regarding the SBE, the ALJ found that Plaintiff's lacked standing to appeal the SBE's Final Report regarding IEE contracts and "respectfully request[ed]" that the SBE reconsider

---

[6] North Carolina's OAH "is an independent, quasi-judicial agency . . . established to ensure that administrative decisions are made in a fair and impartial manner . . . and to provide a source of independent [ALJ's] to conduct administrative hearings in contested cases." N.C. Gen. Stat. § 7A-750.

its finding that the Limited Relationship Provisions in DPS's IEE Contract were lawful. (*Id.* at 2, 144.) The ALJ concluded by advising the parties of their appeal rights. (*Id.* at 144.)

Key to the resolution of this case is whether Plaintiffs successfully appealed the ALJ's decision. DPS appealed elements of the ALJ's decision on April 26, 2019. (*See* ECF No. 22 ¶ 161.) On May 10, Plaintiffs filed their own notice of appeal with the OAH. (*See id.* ¶ 166.) However, the State Hearing Officer assigned to review the case, Joe Walters, ("the HO" or "Officer Walters") concluded that Plaintiffs' appeal was improperly filed. (*See id.* ¶¶ 162, 172, 174.) On May 25, Officer Walters issued his final decision regarding the portions of the ALJ's decision appealed by DPS. (*See id.* ¶ 176; ECF No. 24-2 at 2.) His final decision addressed only issues DPS raised in its appeal and did not consider the issues Plaintiffs attempted to raise in their May 10 filing. (*See* ECF No. 24-2 at 5.) The HO agreed with the ALJ that DPS's Limited Relationship Provision violated the IDEA. (*Id.* at 20, 24–25.) He then ordered DPS to comply with the requirements of state and federal law while also concluding that he could not grant any relief to Plaintiffs as K.I. no longer attended public school in Durham. (*Id.* at 24.)

On August 23, 2019, Plaintiffs filed their original complaint in this action. (ECF No. 1.) Plaintiffs amended their complaint on November 25, 2019. (ECF No. 22.) They seek: declarations that Defendants violated the law and that K.I. was eligible for IDEA services; an injunction prohibiting use of the IEE Contract; compensatory education and related services for K.I.; reimbursement of their due process expenses; and attorneys' fees and costs. (*See id.* ¶¶ 251–59.) In response to Plaintiffs' amended complaint, Defendants filed the motions to dismiss now before the Court. (ECF Nos. 24; 27.)

7

## III. DISCUSSION

Defendants advance several arguments for dismissing Plaintiffs' amended complaint. According to DPS, the Court lacks jurisdiction over Plaintiffs' IDEA, Section 504, and ADA claims because Plaintiffs failed to exhaust their administrative remedies. (ECF No. 25 at 6–9.) DPS further argues that Plaintiffs' IEE contract claim is moot because DPS no longer uses the challenged provisions, (*id.* at 9–12), and that Plaintiffs' Section 504 and ADA claims fail to state a claim upon which relief can be granted, (*id.* at 12–14). SBE makes similar arguments, adding that Plaintiffs lack standing to sue it because it "took no direct action whatsoever regarding K.I." (ECF No. 28 at 11–20.) The Court need not address all of these arguments because, as explained below, Plaintiffs failed to exhaust their administrative remedies, which deprives the Court of the jurisdiction required to hear their claims.

### A. Plaintiffs Failed to Exhaust Their Administrative Remedies

Administrative exhaustion of IDEA claims in North Carolina is a two-step process requiring an administrative due process hearing conducted by an ALJ and a review of the ALJ's decision conducted by a state-appointed hearing officer. *See, e.g., Z.G.*, 744 F. App'x at 776–77. Here, Defendants argue that Plaintiffs completed the first step—seeking a due process hearing before an ALJ—but failed to take the second—filing a proper and timely appeal of the ALJ's decision to the hearing officer. (*See* ECF Nos. 25 at 7; 28 at 16.) Plaintiffs argue in response that they properly filed a written notice of appeal, which was then improperly denied, and thus that they have exhausted their remedies. (*See* ECF No. 26 at 11.) This issue is ripe for resolution on a motion to dismiss because "[w]hether a plaintiff has properly exhausted all administrative remedies is a pure question of law." *See E.L.*, 773 F.3d at 514; *see also Z.G.*, 744

F. App'x at 773, 776 (affirming dismissal of "IDEA and other education-related claims" for failure to exhaust administrative remedies); *O.V. v. Durham Pub. Sch. Bd. of Educ.*, No. 1:17cv691, 2018 WL 2725467, at *19 (M.D.N.C. June 6, 2018) (recommending dismissal of plaintiffs' IDEA, ADA, and Section 504 claims for failure to exhaust), *adopted* 2018 WL 3370644 (M.D.N.C. July 10, 2018).

North Carolina General Statutes Section 115C-109.9(a) gives a party appealing an ALJ's decision thirty days to file "a written notice of appeal with the person designated by the State Board [of Education] . . . to receive notices." N.C. Gen. Stat. § 115C-109.9(a). As the ALJ issued her final decision on April 11, 2019, any appeals were due on May 11, 2019. (ECF No. 22 ¶ 160.) Furthermore, there is no dispute that the person designated by the SBE to receive written notices of appeal was Teresa Silver King. (*Id.* ¶ 161.) Thus, Plaintiffs were required to file a written notice of appeal with King by May 11. While Plaintiffs' counsel did contact King in advance of the appeals deadline to inform her that "Plaintiffs intended to submit a Notice of Appeal," Plaintiffs then "electronically filed their Notice of Appeal in the [OAH]" instead. (*Id.* ¶¶ 164, 166.) On May 14, 2019, three days after the appeals deadline expired, King informed Plaintiffs that she had not received a notice of appeal from them. (*See id.* ¶ 168.) In response, Plaintiffs provided King with a copy of the notice of appeal that they had previously filed with the OAH. (*Id.* ¶ 169.) Based on this apparent failure to file a written notice with King prior to the expiration of the appeals deadline, Officer Walters concluded that Plaintiffs failed to appeal the ALJ's decision. (*See* ECF No. 24-2 at 5.)

Here, Plaintiffs failed to file a written notice of appeal with King as required by the plain text of North Carolina law. As Plaintiffs' amended complaint makes clear, Plaintiffs filed

9

with the OAH instead. Plaintiffs do not dispute that they filed with the OAH, rather, Plaintiffs argue that King and Defendants had actual notice of their appeal prior to the May 11 deadline.[7] (*See* ECF No. 22 ¶¶ 166–67; 34 at 4–5.) However, as previously recognized, the statute does not require actual notice to the opposing party or the SBE's designee concerning a party's attempt or intent to appeal; it requires a written notice of appeal to be filed with the designee. N.C. Gen. Stat. § 115C-109.9(a).

The Court's reading of the statute's requirements is supported by the Fourth Circuit's treatment of the same statute in *E.L. v. Chapel Hill-Carrboro Board of Education*. While the facts of *E.L.* are not on all fours with this case, in *E.L.*, the Fourth Circuit rejected a plaintiff's contention that the "over 100 pages of written argument" she submitted to a state hearing officer constituted an effective appeal of an ALJ's decision despite her failure to otherwise "properly" comply with N.C. Gen. Stat. § 115C-109.9(a). 773 F.3d at 516. This would appear to indicate that strict adherence, rather than substantial compliance, to the statute's requirements is necessary to exhaust a would-be appellant's administrative remedies.

Furthermore, such insistence on "proper" exhaustion is in no way incompatible with the IDEA and appears to be required beyond the Fourth Circuit. As the Sixth Circuit has explained, requiring that parties "properly present their claims to the relevant state administrative agenc[ies]" before they file in federal court serves the valuable function of allowing state agencies to develop factual records, correct their own mistakes, and exercise their educational expertise. *Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*, 655 F. App'x 423, 432 (6th Cir. 2016) (analyzing IDEA exhaustion under a two-step administrative procedure

---

[7] Defendants do not dispute this.

similar to North Carolina's). The Court therefore finds that Plaintiffs failed to exhaust their administrative remedies, meaning the Court lacks subject-matter jurisdiction unless an exception to the IDEA's exhaustion requirement applies.[8]

### B. No Exception to the Exhaustion Requirement Applies

Having concluded that Plaintiffs failed to exhaust their administrative remedies, the Court now considers Plaintiffs' alternative argument that they were not required to exhaust their remedies. (*See, e.g.*, ECF No. 32 at 14–18.) The Fourth Circuit has recognized three "narrow" exceptions to the IDEA's administrative exhaustion requirement. *Z.G.*, 744 F. App'x at 777; *E.L.*, 773 F.3d at 516; *MM*, 303 F.3d at 536. Plaintiffs are not required to exhaust their administrative remedies "(1) when the administrative process would have been futile; (2) when a school board failed to give parents proper notification of their administrative rights; or (3) when administrative exhaustion would have worked severe harm upon a disabled child." *MM*, 303 F.3d at 536. "The party asserting an exception to the exhaustion requirement bears the burden of proving it applies." *O.V.*, 2018 WL 2725467 at *13 (citing *Koster v. Frederick*

---

[8] Harsh though this result may seem given Plaintiffs' obvious efforts to exhaust their remedies and the substantial degree to which they appear to have complied with the law, there is no indication that the Fourth Circuit or North Carolina recognizes any kind of equitable exception to the state's established procedure for appealing an ALJ's decision. Because the Fourth Circuit treats the IDEA's exhaustion requirement as jurisdictional, the Court lacks the authority to fashion an equitable exception to North Carolina's procedure. *See, e.g.*, *Staudner v. Robinson Aviation, Inc.*, 910 F.3d 141, 147 (4th Cir. 2018) (explaining that courts have "no authority to create equitable exceptions to jurisdictional requirements" (quoting *Bowles v. Russell*, 551 U.S. 205, 214 (2007)); *but see, e.g.*, *Boggs v. Krum Indep. Sch. Dist.*, 376 F. Supp. 3d 714, 720–21 & n.4 (E.D. Tex. 2019) (treating the IDEA's exhaustion requirement as non-jurisdictional and finding a school district was judicially estopped from arguing that a plaintiff failed to exhaust her administrative remedies); *T.H. v. District of Columbia*, 255 F. Supp. 3d 55, 56–57 (D.D.C. 2017) (holding that administrative exhaustion under the IDEA is an affirmative defense, "not a jurisdictional prerequisite to suit").

*Cty. Bd. of Educ.*, 921 F. Supp. 1453, 1455 (D. Md. 1996)). On a motion to dismiss, the party "must allege facts that, if proven, would support one of the narrow exceptions to IDEA's exhaustion requirement." *Learning Disabilities Ass'n of Md., Inc. v. Board of Educ. of Balt. Cty.*, 837 F. Supp. 717, 723 (D. Md. 1993). Furthermore, to satisfy their burden, the plaintiff must demonstrate "that the underlying purposes of exhaustion would not be furthered by enforcing the exhaustion requirement." *O.V.*, 2018 WL 2725467, at *13 (quoting *Learning Disabilities*, 837 F. Supp. at 724). The underlying purposes of exhaustion include "allowing states to use their special expertise to resolve educational disputes," *E.L.*, 773 F.3d at 514, and affording states the opportunity to correct misconduct "without resort to lengthy and costly trial," *Learning Disabilities*, 837 F. Supp. at 724–25.

Here, Plaintiffs argue that the first exception to the exhaustion requirement applies—that is, that they were not required to appeal to the HO because such an appeal would have been futile. (ECF No. 26 at 11–15; 32 at 14–18.) Plaintiffs submit that exhaustion would have been futile for two reasons. First, they contend that exhaustion was futile "due to the inherent bias of the SBE." (*See* ECF No. 26 at 12.) Second, they assert that exhaustion was futile, at least on the IEE contract issue, because of "the ALJ and [HO's] inability to mandate the SBE to develop procedures to prevent future unlawful IEE contract provisions or [to] order DPS to abandon the use of illegal contracts with other students." (*See id.*) The Court will address each argument in turn.

       *i. Futility of exhaustion due to bias*

Though Plaintiffs have not identified—and the Court has not located—a Fourth Circuit opinion stating as much, IDEA case law suggests that a hearing officer could be so

biased in favor of local or state educational authorities as to make administrative exhaustion futile.[9] This is consistent with the procedural safeguards of the IDEA, which guarantee that parents and school officials be given an "*impartial* due process hearing." 20 U.S.C. § 1415(f) (emphasis added); *see also* James A. Rapp, 4 Education Law § 10C.12 (2020) (explaining that impartiality is a "basic and essential" element of the IDEA process). This concern with fairness is also reflected in the IDEA's rule barring certain conflicted individuals, including any person "having a personal or professional interest that conflicts with the person's objectivity in the hearing," from serving as a hearing officer. *See* 20 U.S.C. § 1415(f)(3)(A); *see also* 34 C.F.R. § 300.511(c)(i)(B). Furthermore, numerous courts have considered whether certain individuals are sufficiently impartial to serve as hearing officers, *see* Rapp, § 10C.12 (collecting cases), and some have done so in the context of the futility exception to the administrative exhaustion requirement, *see Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 249 (2d Cir. 2008); *B.J.S. ex rel. N.S. v. State Educ. Dept./The Univ. of The State of N.Y.*, 815 F. Supp. 2d 601, 610 (W.D.NY. 2011). Thus, the Court concludes that a state hearing officer's bias or lack of impartiality could render administrative exhaustion futile. However, hearing officers "enjoy a presumption of honesty and integrity," that can only be overcome by "a clear showing of actual bias." *See* Rapp, § 10C.12. Finally, as is the case generally with exceptions to the exhaustion requirement, the burden is on the plaintiff to demonstrate this bias. *See id.*

Here, Plaintiffs primarily argue that exhaustion was futile because Officer Walters was not sufficiently independent from the SBE. This argument is reflected in Plaintiffs' briefing, which repeatedly conflates the SBE, a defendant in this case, with the HO who heard DPS's

---

[9] Defendants do not argue otherwise.

13

appeal and who determined that Plaintiffs' had not filed a timely appeal. (*See, e.g.*, ECF No. 26 at 12–13.) In North Carolina, hearing officers are appointed by the SBE. N.C. Gen. Stat. § 115C-109.9(a). However, they are not employees of the SBE or the NCDPI. *Id.* § 115C-109.9(b). Instead, they are "educator[s] or other professional[s] who [are] knowledgeable about special education" who are tasked with making "impartial" and "independent" decisions.[10] *Id.* § 115C-109.9(a)-(b). Given these procedural safeguards, the Court recognizes the distinction between the actions of the SBE and the HO.

Plaintiffs have not alleged sufficient facts in their amended complaint, taken as true, to demonstrate that Officer Walters's (alleged) bias against them rendered administrative exhaustion futile. Plaintiffs contend that the Court should infer bias from Officer Walters's decision to reject their written notice of appeal as untimely. (*See* ECF No. 26 at 14.) However, as explained above, Officer Walters correctly determined that Plaintiffs' attempted appeal did not comply with the requirements of N.C. Gen. Stat. § 115C-109.9(a). Plaintiffs have also alleged that the HO rejected their notice of appeal, which was filed electronically with the OAH, even though hearing officers routinely accept appeals filed in that manner in cases where the SBE is not a defendant. (*See* ECF Nos. 22 ¶ 166; 26 at 13.) While it would be suggestive of bias if hearing officers applied the requirements of North Carolina law selectively in order to protect the SBE, in this case, any allegation of bias is seriously undermined by a review of Officer Walters's decision regarding the portions of the ALJ's decision appealed by DPS, which was hardly a total victory for Defendants. (*See* ECF No. 24-2.) As discussed

---

[10] In *E.L.*, the Fourth Circuit upheld North Carolina's two-step "scheme for implementing the review provisions of the IDEA" as "simply recogniz[ing] the state's primary role in setting educational policy and resolving disputes under the [IDEA]." 773 F.3d at 515.

14

above, Officer Walters upheld the ALJ's finding that the Limited Relationship Provisions violated the law—indeed, he went so far as to call them "an egregious procedural violation, calculated to interfere with [Plaintiffs'] procedural safeguards." (*Id.* at 20.) He also advised DPS "that continued use of a contract with provisions similar to the one used in this case would be a procedural violation of IDEA," a warning flatly in conflict with the SBE's prior determination that such restrictive terms in an IEE contract were lawful. (*See id.* at 24.) Nor did Officer Walters's opinion otherwise exhibit any bias toward Plaintiffs—rather, he expressed his "sympath[y]" for their desire to submit an appeal, while stating that "[s]trict adherence to time restrictions [governing appeals was] required." (*Id.* at 5.) The substance of Officer Walters's opinion is therefore inconsistent with Plaintiffs' allegations that he was so biased against them that their appeal through proper administrative channels was futile as a matter of law. *See C.E. v. Chappaqua Cent. Sch. Dist.*, 695 F. App'x 621, 624–25 (2d Cir. 2017) (considering whether a hearing officer's rulings during an IDEA hearing favored parents or a school district in determining whether the hearing officer was biased).

Further, Plaintiffs' claim that the HO's bias rendered their exhaustion futile fails for a second reason. Plaintiffs have not alleged facts demonstrating that the underlying purposes of exhaustion would not be furthered in this case by enforcing the exhaustion requirement. *See O.V.*, 2018 WL 2725467, at *13, 19. In fact, they have not clearly addressed the underlying purposes of the exhaustion requirement. Exhaustion is required, in part, to promote judicial economy, and judicial economy would have been promoted by giving the HO—who, unlike the Court, is an expert in special education law—the opportunity to review Plaintiffs' claims. *See Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992) ("States are given the

15

power to place themselves in compliance with the [IDEA] . . . . Federal courts—generalists with no experience in the educational needs of handicapped students—are given the benefit of expert factfinding by a state agency devoted to this very purpose."); *A.H. ex rel. H.C. v. Craven Cty. Bd. of Educ.*, No. 4:16-CV-282-BO, 2017 WL 3493612, at *3–4, (E.D.N.C. Aug. 14, 2017) (dismissing plaintiffs' complaint for failure to exhaust where plaintiffs did not demonstrate "why the underlying purposes of exhaustion . . . would not be furthered if plaintiffs were required to exhaust their administrative remedies").

In conclusion, given the presumption that hearing officers behave impartially, the Court's finding that Officer Walters followed state law in rejecting Plaintiffs' attempted appeal, the absence of evidence of bias in his final decision, and the Court's interest in judicial economy, which would have been furthered by exhaustion, Plaintiffs have failed to allege facts that would support the narrow exception to the IDEA's exhaustion requirement that exists when hearing officers are so biased that appeal to them would be futile.

*ii. Futility of exhaustion due to inability to provide relief*

Next, Plaintiffs argue that it was futile for them to exhaust their administrative remedies regarding their IEE contract claim because the ALJ and HO were not authorized "to mandate the SBE to develop procedures to prevent future unlawful IEE contract provisions or [to] order DPS to abandon the use of the illegal contracts with other students." (*See* ECF Nos. 26 at 12; 32 at 15.) Their argument on this issue is brief, unsupported by citation to governing or persuasive law, and ultimately unpersuasive. (*See* ECF Nos. 26 at 12; 32 at 15.) Even assuming that Plaintiffs are correct that the ALJ and HO could not grant the injunctive relief they sought, this would not excuse their failure to exhaust their administrative remedies because "the mere

16

unavailability of injunctive relief does not render the IDEA's administrative process inadequate." *Hoeft*, 967 F.2d at 1309; *see also, e.g.*, *Student A v. S.F. Unified Sch. Dist.*, No. 19-cv-03101-WHO, 2020 WL 571052, at *4 (N.D. Cal. Feb. 5, 2020) ("[F]utility or inadequacy is not established simply because the body hearing the administrative appeal lacks jurisdiction to provide all or some of the relief requested." (citing *Paul G. ex rel. Steve G. v. Monterey Peninsula Unified Sch. Dist.*, 933 F.3d 1096, 1102 (9th Cir. 2019))); *J.G. ex rel. C.G. v. Knox Cty.*, No. 1:19-cv-63, 2019 WL 4451203, at *5 (E.D. Tenn. Sept. 17, 2019) (rejecting argument that an ALJ's inability to "fix practices or policies which will inevitably repeat themselves" excused a failure to exhaust where exhaustion would have promoted "accuracy, efficiency, agency autonomy, and judicial economy as [the IDEA] intended"); *P.G. ex rel. R.G. v. Rutherford Cty. Bd. of Educ.*, 313 F. Supp. 3d 891, 905 (M.D. Tenn. 2018) ("[P]laintiffs [must] exhaust their administrative remedies and build a record even if the plaintiff seeks certain relief, like money damages, that is unavailable in an IDEA administrative proceeding.").

As the Ninth Circuit explained in *Hoeft v. Tucson Unified School District*, even when a state administrative process lacks the ability to provide IDEA plaintiffs with the injunctive relief they seek, exhaustion of administrative remedies can still promote "statutory compliance" by correcting problems at the local level and by "alert[ing] the state to local compliance problems." 967 F.2d at 1309–10. Indeed, that seems to be what happened in this case. Plaintiffs challenged the Limited Relationship Provisions that DPS incorporated into the IEE Contract, the ALJ and HO agreed with Plaintiffs that the terms violated the IDEA, and, in response, DPS abandoned use of the terms and now acknowledges that "the standing rule" across North Carolina is that the Limited Relationship Provisions are prohibited. (*See* ECF

17

Nos. 24-3 ¶ 4; 25 at 9; 29 at 5.) Thus, Plaintiffs have failed to show that the inability of the ALJ and HO to order broad injunctive relief made it futile for them to exhaust their administrative remedies.

To summarize, the Court finds that Plaintiffs failed to exhaust their administrative remedies, and that none of the narrow exceptions to the administrative exhaustion requirement apply. In particular, exhaustion was not futile due to bias or the limited powers of North Carolina's administrative process. Thus, Plaintiffs have failed to exhaust their administrative remedies under the IDEA, depriving the Court of subject-matter jurisdiction over their IDEA claims. Remaining are Plaintiffs' Section 504 and ADA claims. However, as explained below, these claims must likewise be dismissed because of Plaintiffs' failure to exhaust their administrative remedies.

### C. Plaintiffs' Failure to Exhaust Requires Dismissal of Remaining Claims

Defendants argue, and Plaintiffs do not appear to contest, that Plaintiffs' Section 504 and ADA claims are also subject to the IDEA's administrative exhaustion requirement. (*See* ECF Nos. 25 at 8–9; 28 at 15–17.) Claims brought under the Rehabilitation Act and the ADA "are subject to the IDEA's exhaustion requirement if those claims 'seek relief that is also available under' the IDEA, namely relief for the denial of a FAPE." *Z.G.*, 744 F. App'x at 778 (quoting 20 U.S.C. § 1415(l)). To determine if a plaintiff seeks relief available under the IDEA, courts "look to the substance, or gravamen, of the plaintiff's complaint." *Id.* (quoting *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 752 (2017)). Specifically, as the Supreme Court explained in *Fry v. Napoleon Community Schools*, courts ask two hypothetical questions to determine if the gravamen of the plaintiff's complaint is really the denial of a FAPE. *Id.* "First, could the

18

plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school . . . ?" *Fry*, 137 S. Ct. at 756. "[S]econd, could an *adult* at the school . . . press[ ] essentially the same grievance?" *Id.* If the answer to these questions is no, "then the complaint probably does concern a FAPE," and so is likely subject to the IDEA's exhaustion requirement. *See id.* *Fry* also instructs courts to consider whether a plaintiff's complaint began its journey to court through the IDEA's administrative process, as such an origin provides "strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE." *Id.* at 757.

Here, Plaintiffs have brought Section 504 and ADA claims against Defendants. (ECF No. 22 ¶¶ 218–50.) Plaintiffs' Section 504 claim against the SBE alleges the SBE discriminated against Plaintiffs by "denying them the ability to access the second tier of administrative review" under the IDEA, approving the IEE Contract, and by not retracting its conclusion that the Limited Relationship Provisions were lawful. (*See id.* ¶¶ 218–26.) Plaintiffs' Section 504 claim against DPS also grows out of the terms of the IEE Contract. (*Id.* ¶¶ 227–32.) Plaintiffs' ADA claims contain essentially the same allegations. (*Id.* ¶¶ 233– 50.) Applying the Supreme Court's guidance in *Fry*, the gravamen or essence of these claims is the denial of a FAPE—indeed, Plaintiffs do not claim otherwise. A child could not bring these claims against a non-educational public facility, an adult could not bring them alone, and Plaintiffs have argued at length that the same conduct violated the IDEA. Plaintiff's Section 504 and ADA claims are therefore subject to the IDEA's administrative exhaustion requirement and so must likewise be dismissed. *See Z.G.*, 744 F. App'x at 779–80.

19

## IV. CONCLUSION

Having concluded that Plaintiffs failed to exhaust their administrative remedies under the IDEA, that exhaustion was not futile, and that Plaintiffs were also required to exhaust their remedies in order to bring their other education-related claims, the Court lacks subject-matter jurisdiction to hear this case. Accordingly, Defendants' motions to dismiss must be granted.

For the reasons stated above, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Defendants' Motions to Dismiss, (ECF Nos. 24; 27), are GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' case is DISMISSED WITH PREJUDICE.

This, the 29th day of June 2020.

/s/Loretta C. Biggs
United States District Judge